RECORD NO. 14-4486

In The

# United States Court of Appeals
### For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## LLOYD B. CARR, a/k/a Lloyd Carr,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT PARKERSBURG**

––––––––––––

**BRIEF OF APPELLANT**

––––––––––––

**Dorwin J. Wolfe**
**WOLFE LAW FIRM**
**200 Kerens Avenue**
**Elkins, West Virginia  26241**
**(304) 637-5755**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.     The district court erred in denying the Appellant a three-level
          reduction for acceptance of responsibility pursuant to U.S.S.G.
          §§ 3E1.1(a)-(b) based solely on the Appellant's allocution
          during his sentencing hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.    Whether the district court erred in denying the Appellant's
          requests for a downward variances . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

<u>Gall v. United States,</u>
     552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 15

<u>Pepper v. United States,</u>
     131 S. Ct. 1229 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>United States v. Byrum,</u>
     604 F.3d 161 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>United States v. Divens,</u>
     650 F.3d 343 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>United States v. Harris,</u>
     882 F.2d 902 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>United States v. Kise,</u>
     369 F. 3d 766 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

<u>United States v. Lewis,</u>
     606 F.3d 193 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>United States v. Manigan,</u>
     592 F.3d 621 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>United States v. May,</u>
     359 F.3d 683 (4th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>United States v. Morace,</u>
     594 F.3d 340 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

<u>United States v. Osborne,</u>
     514 F.3d 377 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Raby,
    575 F.3d 376 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wasmand v. United States,
    468 U.S. 559 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 15, 16

18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 17

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **RULE**

Fed. R. App. P. 4(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## **GUIDELINES**

U.S.S.G. § 2B1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

U.S.S.G. § 3E1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 9, 10

U.S.S.G. § 3E1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 20

U.S.S.G. § 3E1.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _passim_

## **OTHER AUTHORITIES**

Michael  L. Benson, _Denying the Guilty Mind:_
_Accounting for involvement in a White-Collar Crime,_
23 Criminology 583 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cressery, D.R. (1965), The Respectable Criminal.  Criminology, 3:13-16 . . . . . 13

*At a loss for justice Federal Sentencing for economic offenses*,
Alan Ellis, John R. Steer, and Mark H. Allenbaugh, Criminal Justice,
Volume 25, Number 4, Winter 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Todd Haugh, *Sentencing the Why of White Collar Crime*,
82 Fordham Law Review 3143 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

"Wherefore Art Thou Guidelines?  An Empirical Study of
White-Collar Criminal Sentencing and How the *Gall* Decision
Effective Eliminated the Sentencing Guidelines,"
by S. Patrick Morin, Jr. Pierce Law review, vol. 7 No. 1 . . . . . . . . . . . . . . . 19-20

Glenn R. Schmitt and Elizabeth Jones,
Office of Research and Data, United States Sentencing Commission
*Overview of Federal Criminal Case Fiscal Year 2013* . . . . . . . . . . . . . . . . . . . . . 8

*United States Attorneys' Annual Statistical Report*,
Fiscal Year 2013, U.S. Department of Justice Executive
Office for United States Attorneys . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATEMENT OF JURISDICTION

This is an appeal of a criminal sentence. The United States District Court for the Southern District of West Virginia had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.  On June 2, 2014, the district court entered a criminal judgment order regarding Lloyd B. Carr.  On June 3, 2014, Appellant Carr, filed his notice of  appeal, in a timely manner, pursuant to Fed. R. App. P. 4(b)(1).  This Honorable Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

I.      Whether the district court erred in finding that the Defendant failed to accept responsibility based solely on his allocution during his sentencing hearing.

II.     Whether the district court erred in denying the Appellant's request for a downward variances.

## STATEMENT OF THE CASE

1.     The Appellant seeks to have three levels for acceptance of responsibility restored, which prior to his allocution, he was to receive, after Appellant's statement to the district judge did not award him a three-level departure for acceptance.

2.     The Appellant seeks to have the case sent back for resentence with instructions for consideration of his individual 18 U.S.C. § 3553(a) factors.

**Statement of the Facts**

The Appellant was indicted as the sole defendant in a thirty-count indictment on October 23, 2012, in the United States District Court for the Southern District of West Virginia. The allegations in the indictment were for a fraud scheme involving the sale of annuities defrauding over ten individuals with policies which were held as part retirement. J.A. pg 8.

The Appellant plead guilty to Count 7 on August 13, 2013, before the Honorable Thomas E. Johnston, United States District Judge for the Southern District of West Virginia. J.A. pg 24. A Presentence Report was prepared. Parties filed objections. The final draft along with probation's responses were provided to the court on March 5, 2014. J.A. 392 Vol II PSR underseal.

The probation officer calculated the following recommenced sentence for the Appellant; a base level offense of 7, 14 levels added for the loss, which exceeds $400,000 but less than $1,000,000, 2 additional levels for 10 or more victims, 2 more levels for a vulnerable victim adjustment and 2 for abusing position of trust, for a total adjusted offense level of 27. J.A. pg 414 paragraphs 74- 80.

The probation officer found that the defendant clearly demonstrated acceptance for the offense and pursuant to U.S.S.G. § 3E1.1(a) adjusted downward two levels. J.A. pg 414, PSR paragraph 81. Pursuant to U.S.S.G. § 3E1.1(b),

probation also found that the Appellant assisted authorities in a timely manner and adjusted downward an additional level for a total offense level of twenty-four. J.A. pg 415, PSR paragraph 83.  Because the Appellant had no criminal history, he was a criminal history category I for an advisory guideline range of 51 to 63 months.  J.A. pg. 423, PSR paragraph 130.

The Appellant filed a "Defendant's Motion for a Variance Sentence".  J.A. pg 45.  In the Appellant's variance motion, support by 18 U.S.C. § 3553(a)(2) factors he sought a sentence substantially below the advisory guideline range of 51 to 63.

The Appellant's motion for variance outline mitigating factors, including his being a 55 year old veteran, having served in the 82nd airborne; having been married for many years and raising a family; that he had been a productive employee his entire life and had never been convicted of a crime, other than traffic offenses.  J.A. pg 46-48.  The Appellant argued that his crimes were aberrant behavior and he has health concerns which would affect his being confined.  J.A. pg 50.

During the sentencing hearing, the Appellant offered a lengthy allocution after the victims had testified.  In his statement, he said that his goal was "*always to return back to them what  they – what they had given to me*" J.A. pg 344, ln 11-12. and that "*It was never my intention for – to hurt anyone*" J.A. pg 341 ln 3.  The

Appellant offered reasons for mitigation outlining many positive factors from his life.  J.A. pg 340-344.

The sentencing court was not impressed with the Appellant's statements and immediately stated "we're going to need to address whether or not I should award acceptance of responsibility in this case after that statement."   J.A. pg 344 ln 20-21.  The sentencing court denied the Appellant's request for a variance as requested.  J.A. pg 352 ln 4, 5.

## SUMMARY OF THE ARGUMENT

First, the district court erred in denying three levels for acceptance because the Appellant met the requirements under U.S.S.G. § 3E1.1.  The Appellant's statement was due to what is termed "neutralization," which is a mental thought process that a majority of white-collar criminals possess for which treatment is needed; not additional punishment.

Second, the district court did not adequately consider all of the 3553(a) factors when it denied the Appellant's motion for a variance which warranted a below advisory guideline sentence.

## ARGUMENT

**Standard of Review**

The first assignment of error involves loss of acceptance by the Appellant. In reviewing a sentencing court's application of the United States Sentencing

-4-

Guidelines, the district court's factual findings are reviewed for clear error and its legal conclusions are reviewed de novo. United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008). A finding of "clear error only if, on the entire evidence [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Manigan, 592 F.3d 621, 631 (4th Cir. 2010).

The second assignment of error involves the failure of the sentencing court to grant the Appellant a downward variance. Once an appellate court finds no significant procedure error, they must "then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." In doing so, we must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." U.S. v. Morace, 594 F.3d 340, 346 (4th Cir. 2010) quoting from Gall v. United States, 552 U.S. 38 at 51 (2007).

**Discussion**

**I.    The district court erred in denying the Appellant a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a)-(b) based solely on the Appellant's allocution during his sentencing hearing.**

Prior to the Appellant's sentencing hearing, all parties were in agreement that he was entitled to a three-level reduction for acceptance.

The United States Sentencing Guideline provides for a two-level reduction if the Defendant clearly demonstrates acceptance of responsibility for his

offense. U.S.S.G. § 3E1.1. If a Defendant qualifies under § 3E1.1(a), and his offense level is 16 or greater, upon a motion of the government stating that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level. U.S.S.G. § 3E1.1(b).

The probation officer, under paragraph 72 of the Presentence Report, found that "During his presentence interview, the defendant said he is sorry that this offense occurred. The defendant said he feels bad that it happened. The defendant said he is not proud of what he did to someone else, and he wished it never would have happened." J.A. pg 414.

The United States Probation Officer further found in his report that "The defendant has clearly demonstrated acceptance of responsibility for the offense." "Accordingly, the offense level is decreased by two levels." J.A. pg 414 PSR Paragraph 81.

Probation also noted that "the defendant has assisted authorities in the investigation and prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty." J.A. 415 PSR paragraph 82. A three-level downward adjustment was appropriate based upon probation's investigation of this case.

The commentary under Application Notes 3 for U.S.S.G. § 3E1.1, provides more insight into this adjustment.

> Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under 1B1.3 (Relevant Conduct)(see Application Note 1(A)), will constitute significant evidence of acceptance of responsibility for the purpose of subsection (a).

The Appellant's conduct up to the sentencing hearing was "significant evidence" that he had accepted responsibility.

The district judge at the beginning of his sentencing hearing made his tentative findings on the record. "Therefore, I find a Base Offense Level of 7; plus 14 for the amount of the loss; plus 2 for ten or more victims; plus 2 for vulnerable victim; plus 2 for abuse of position of trust; minus 3 for acceptance of responsibility, for a Total Offense Level of 24." J.A. 334 ln 3-7.

The Appellant gave up valuable constitutional rights in exchange in part for acceptance. The Appellant's case was a complicated financial fraud case which would have required a lengthy trial. His plea freed up significant resources which the government could spend on other crimes and it also saved significant judicial resources. The government and the court benefit from the plea process and the entire judicial system depends greatly on defendants pleading.

In the fiscal year 2013, 80,207 offenders were sentenced in the federal criminal justice system. Glenn R. Schmitt and Elizabeth Jones, Office of Research and Data, United States Sentencing Commission *Overview of Federal Criminal Case Fiscal Year 2013*.

The huge majority of those sentenced have given up their right to a trial by jury, in part to receive a downward departure under acceptance of responsibility. Since the adoption of the Sentencing Guidelines, trials in federal district courts are a rarity. In the fiscal year 2013, only 315 cases were disposed of by jury trials in our entire federal justice system. *United States Attorneys' Annual Statistical Report*, Fiscal Year 2013, U.S. Department of Justice Executive Office for United States Attorneys pg. 15. Only 315 jury trials out of 83,825 defendants. Id. page 15.

The government saves resources and trial avoidance only if defendants plead. "Similarly, although 3E1.1(b) subsequently identifies general interest – resource allocation and trial avoidance– the syntax of the guideline dictates that the furtherance of these interest must again derive from this same single source: the defendant's 'timely notif [ication of ] authorities of his intention to enter a plea of guilty" United States v. Divens, 650 F.3d 343, 348 (4th Cir. 2011).

If the considerations normally given to a defendant for pleading, like acceptance, is taken away, it will result in a decrease of a defendant's willingness to plead.

The Appellant concedes that simply pleading does not automatically entitle him to acceptance. United States v. Harris, 882 F.2d 902, 906 (4th Cir. 1989). As prosecutors and courts seek to deny a key benefit, defendant's garner by pleading, three levels for acceptance, defense counsel will have to advise clients that acceptance is increasingly being taken which will equate in less of an incentive to plea.

The Appellant also recognizes that the commentary application note 5 of § 3E1.1 provides "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."

In order to receive a reduction under § 3E1.1 for acceptance of responsibility, the defendant must prove by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct. United States v. May, 359 F.3d 683, 693 (4th Cir. 2004).

The district judge solely considered the Appellant's statements made during sentencing as the only evidence that he did not accept responsibility. "The statement today alone, I believe, undermines acceptance of responsibility and I find

that this defendant has, in fact, not accepted responsibility and I will not award those three levels." J.A. 363 ln 22-25.

If these statements were weighted against his actions prior to the sentencing hearing, on balance by a preponderance of the evidence, he clearly has accepted responsibility in light of Application Commentary Note 3, U.S.S.G. § 3E1.1. The Appellant provided information and stipulated to the loss amount with the government. J.A. 334 ln 15-17. As probation noted "The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct". J.A. 415, PSR paragraph 82.

The sentencing judge had the court reporter type up a section of the Appellant's statement to base the loss of acceptance.

> "I never plotted anything. This wrong thing I've done wasn't deliberate. The prosecution spoke of what I tried to take advantage of people. I never tried to do that at all. My whole goal was always to help these individuals and to give back to what they gave to me. I didn't try to forge anybody's name on anything. I've never tried to contact anyone to try to do these types of things that they have told about me. I've never tried to do those things. You know, when this first started out, there was 35 charges against me. I pleaded not guilty to those charges. So it came down to one charge and I'm saying I was willing to fight it try to get my name cleared and it's down to one charge now." J.A. 363 ln 4-15.

The district court found that the Appellant was "implying he's only actually guilty of one of these charges, which will obviously raise the point that he is frivolously denying what is obviously relevant conduct". J.A. 363 ln 15-18.

"[T]he statement today alone, I believe, undermines acceptance of responsibility and I find that this defendant has, in fact, not accepted responsibility and I will to award those three levels." J.A. 363 ln 22-25.

The district court stopped its inquiry. However, the Appellant would urge that courts must inquire further. We need to understand "why" the Appellant did what he did so we can place his statement in context. Granted it is far easier to adopt the common view of white-collar criminals, but shouldn't we do the more difficult work of understanding a person's actions through their own eyes?

The actions of the Appellant in this case easily outrages all of us and after listening to the victims testify, anyone would want to extract retribution. This is a natural reaction and one that the district judge may have acted upon. However, more is going on with the Appellant.

The psychological underpinning of white-collar criminals like Lloyd Carr give insight into why he presented as he did during his sentencing hearing, helping explain why a man with an unblemished background would commit these crimes.

In the Fourth Circuit Court of Appeals case of United States v. Kise, 369 F.3d 766 (4th Cir. 2004), this court found that the district court erred in denying the defendant's acceptance of responsibility.

In Kise, the district court took away the defendant's acceptance for what "identified a system of beliefs which are commonly seen in individuals engaged in

sexual activity with minors." <u>Kise</u> at 772.  The defendant in Kise lost acceptance for a psychological underpinning which was present as part of his condition.

Kise, a pedophile, believed that children have the ability to consent to sexual activity.  This flawed system of belief is found in pedophiles.  The district judge in Kise took away his acceptance keying on this system of beliefs.

Likewise, the presentation of the Appellant Lloyd in his colloquy during his sentencing hearing is a symptom of his underlying process termed "neutralization."  This identified system of beliefs is commonly found in white-collar criminals and like the defendant in <u>Kise</u>, the Appellant should not lose acceptance for his underlying process.

> "When judges inquire into defendants' motivations, they necessarily delve into the psychological justifications defendants employ to free themselves from the social norms they previously followed, thereby allowing themselves to engage in criminally.  These "techniques of neutralization" are precursors to white collar crimes, and they impact courts' sentencing decisions.  Yet the role of neutralizations in sentencing has been largely unexamined."  Todd Haugh, *Sentencing the Why of White Collar Crime*, 82 Fordham Law Review 3143 (2014), page 1 abstract.

This article explored "Neutralization Theory" as developed by the criminologist, Donald Cressery.  In summary, this theory is where "the individual uses words and phrases during an internal dialogue that makes the behavior acceptable in her mind (such as by telling she is "borrowing" the money and will pay it back), thus keeping her perception of herself as an honest citizen intact." <u>Id.</u>,

pg 28 quoting,  Cressery, D.R. (1965), The Respectable Criminal.  Criminology, 3:13-16. Doe:10.111/j.1745-9125.1965.tb00108.x.

The Appellant Lloyd engaged in this exact internal dialogue prior to his crimes which allowed him to commit these crimes, while maintaining and keeping strong social views of himself intact.  To the Appellant, in his mind, he always intended to give back the money that he took  "[m]y whole goal was always to return back to them what they – what they had given me."  J.A. 344 ln 11-12.  The Appellant's own lawyer echoed this when he tried to explain the Appellant's mental process  "In his mind at the time, he would make efforts to make it right.  I think that's how he's lived with himself with it and I think that, in his very in artful way, is more what he was trying to communicate."  J.A. 345 ln 4-7.

Through neutralization, a white-collar criminal engages in a pattern of thought, as a criminologist explains which "verbalizations permit behavior that would otherwise be unavailable or unacceptable to the offender."  Id. Haugh, at pg 29.

The Appellant's background lends support.  Otherwise, why would a man who is 55 years old, with no criminal history other than a couple traffic offenses, a veteran who served in the 82nd airborne, was married to the same woman for thirty-six years, raised a family, and was always employed, commit these crimes?  He had no prior criminality until these charges.

This pattern of irrational thinking can result in a normal law-abiding citizen breaking the law.

> "More fundamentally, the neutralization theory seems especially applicable in describing the etiology of white-collar crimes given that "almost by definition white-collar offenders are more strongly committed to the central normative structures." Id. at 31, quoting Michael L. Benson, Denying the Guilty Mind: Accounting for involvement in a White-Collar Crime, 23 Criminology 583, 587 (1985); Stradler, et al., supra not at 497 (citing a series of studies showing "white-collar offenders almost always deny their own criminality).

Instead of taking away Lloyd's acceptance, we need to recognize this documented pattern of thought which is a characteristic of white-collar criminals for what it is so it can be treated.

> "Moreover, courts that understand defendant neutralizations will have more insight when considering appropriate rehabilitative programs. If neutralizations allow individuals to construct self-narratives enabling the commission of white-collar crime, helping individuals realize their neutralization are justifying criminal acts may break the causal chain– neutralizations can be neutralized." Haugh, Id. at 59.

The Appellant's neutralization patterns of thought should be considered as a factor in his sentencing. The United States Supreme Court in Pepper v. United States, found that it is "essential that the district court "consider the widest possible breadth of information about the defendant" to ensure that the sentence "will suit not merely the offense but the individual defendant." Id. Pepper, 131 S. Ct. 1229 at 1240 (Quoting Wasmand v. United States, 468 U.S. 559, 564 (1984)).

-14-

**II.    Whether the district court erred in denying the Appellant's requests for a downward variances.**

The Appellant and the government both filed motions seeking variances. The Appellant sought a downward variance of the calculated advisory guideline range of 51 to 63 months requesting a sentencing of five years statutory probation with the first year serving home confinement or a split sentence of 24 months with one year and a day of imprisonment, the remainder on home confinement for a sentence. The Appellant felt this sentence was sufficient but not greater than necessary to serve the purpose of the guidelines. 18 U.S.C. § 3553(a)(2). J.A. pg 45.

The government requested an upward variance supported by the fraud committed by the defendant and his actions during his offense. J.A. pg 63. The government argued the Appellant was greedy and cheated good hard working people out of their life savings. The government sought vindication for the loss which was both financial and emotional.

The Appellant contends that other than his argument above, regarding loss of acceptance, the district court committed no significant procedure error Gall v. United States, 552 U.S. 38, 51 (2007). The Appellant, however, contends that the district court did fail to adequately consider the 18 U.S.C. § 3553(a)

factors, which he outlined in his "Defendant's Motion for Variance Sentence". J.A.

45.

The district court, when pronouncing the Appellant's sentence, first found an advisory guideline range of 70 to 87 months; "All right. After consideration, then, of the advisory guidelines and the other applicable factors under § 3553(a) of Title 18, I am now ready to impose sentence." J.A. pg 364. It appears from the record, that the district court was so upset with the Appellant's allocution, that it failed to consider the § 3553(a) factors.

> "Mr. Carr, your statement to me today, I'm going to start with that I've never seen a statement like that before, ..., but you can't con me." ( J.A. pg 364 ln 15-19). The court then addressed the seriousness of the crime and position of a professional held by the Appellant (J.A. pg 364 ln 20 continued on pg 365 ln 1-16), and then found "Now, for all of these and many other reasons, I have found no basis to vary downward." (J.A. pg 365 ln 17-18).

Under our jurisprudence, as long as the sentencing judge gives a sentence within the advisory range, the Appellant's sentence was 75 months within his advisory range of 70 to 87, then the Appellate Court may accord a presumption of reasonableness to such a sentence.

> "Notably, the standard of review utilized in sentencing appeals emphasizes the importance of the advisory Guidelines. First, although a sentencing court is not entitled to presume that a within-Guidelines sentence is reasonable, an Appellate Court may accord a presumption of reasonableness to such a sentence." United States v. Lewis, 606 F.3d 193, 201 (4th Cir. 2010); United States v. Raby, 575 F.3d 376, 381 (4th Cir. 2009).

-16-

The Appellant would challenge the substantive reasonableness of his within-Guideline sentence.  First, because the sentencing court did not adequately consider the Defendant's history or characteristics as required under § 3553(a)(2) as outlined in his motion for a variance sentence.  Most notifiable, that he was a veteran having served in the 82 airborne, been married since 1978 and raised a family all while maintaining a good work history, and that Mr. Carr had no criminal background and that his offense is uncharacteristic when viewed in the context of his life and therefore aberrant conduct.  J.A. pg 46-49.

> Pursuant to 18 U.S.C. § 3553(a)(2).   Factors to be Considered in Imposing a Sentence. - The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth I paragraph (2) of this subsection.
> (2) the need for the sentence imposed-
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

The Appellant argued in his motion that his adjusted offense level is on par with much more serious drug and violent crimes.  J.A. pg 50.   Further, that U.S.S.G. § 2B1.1 overstates the seriousness of the offense and lacks any empirical basis for his specific offense characteristics.  J.A. pg 50.  The Appellant outlined the development of the fraud guidelines.  J.A. pg 51-52.  Arguing that this was

recognized by sentencing courts in below guideline sentences in 47.5% of all fraud cases.  J.A. pg 52.

The Appellant's sentence is unreasonable when compared to other fraud cases throughout the federal court system.   These cases presented to the sentencing court show that a disparity exists between the Appellant's sentence and other fraud defendants; cases where losses were greater than the Appellant's.  J.A. pg 52-55.

The sentencing court addressed this comparison.

"One, Mr. Coleman, I note it appears that you or somebody put a lot of work into a part of your sentencing memorandum listing all of these white collar fraud defendants and the relatively light sentences that they got and – and I just want to comment on that." J.A. sentencing hearing pg 351 ln 14-18.

"There's a whole host of reasons, including Rule 35 motions et cetera, where you can end up with those results."  J.A. pg 351 ln 24-25.  "Second of all, I may just disagree with those judges, and there are judges who, in my opinion, give sentences that are way too light in white collar cases and so I may just plain disagree with those judges.  At any rate, I reject that as a basis for variance."  J.A. pg 352 ln 1-5.

The Appellant feels that the district court erred when it failed to compare this disparity in sentencing.  J.A. pg 52-55.  Further "none of the defendants listed received any reduction based on cooperation".  J.A. pg 52.

The Appellant recognizes he is required to show that his sentence is "unreasonably excessive" compared to other defendants of same criminal history and same offense level.

-18-

"Congress defines federal crimes and establishes the proper factors to be considered in fashioning a sentence for those crimes. See 18 U.S.C. § 3553(a)(2006). Under this framework, Congress has determined that when selecting a proper sentence, the sentences imposed on other defendants for other crimes are irrelevant. Rather, federal law expressly limits a sentencing court's consideration of the sentences of other criminal to those imposed for the "the applicable *category of offense* committed by the applicable category of defendant as set forth" in the advisory Guidelines established by the United States Sentencing Commission. <u>United States v. Byrum</u>, 604 F.3d 161, 168 (4th Cir. 2010).

The Appellant's request for a variance is still relevant for it shows significant reduction in fraud cases, when comparing loss and the guideline range with the ultimate percentage of reduction in sentence received.

The American Bar Association has addressed the unreasonableness of the fraud guideline in a 2011 publication, *At a loss for justice Federal Sentencing for economic offenses*, Alan Ellis, John R. Steer, and Mark H. Allenbaugh, Criminal Justice, Volume 25, Number 4, Winter 2011.

"As it stands, the fraud guideline constitutes a series of ad hoc amendments covering a vast array of distinctly dissimilar conduct applying to offenders from the Gordon Gecko variety to the well-intentioned but desperate business owners. There simply is no way the sentences that result from them can be considered principled or even reasonable, especially because loss plays such a central role in determining the ultimate sentence."

The unreasonableness of the fraud guidelines is reflected in downward adjusted sentences that white-collar criminals are receiving. In the article entitled "Wherefore Art Thou Guidelines? An Empirical Study of White-Collar Criminal Sentencing and How the *Gall* Decision Effective Eliminated the Sentencing

-19-

Guidelines," by S. Patrick Morin, Jr. Pierce Law review, vol. 7 No. 1, Mortin

outlines the developments of the significant increase in below guideline range

sentences that district courts have granted in white-collar cases, all reflecting a

trend of downward departures where a defendant's individual characteristics are

considered.

The Appellant's individual characteristics were not considered in his

sentence, nor was his sentence compared and distinguished from other white-collar

criminals who received significant downward departures.

## CONCLUSION

The Appellant would request that this Honorable Court send his case back

for resentencing, first because the district court's denial of a three-level reduction

for Carr's acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a)-(b) was

clearly erroneous and second because the district court abused its discretion when it

unreasonably failed to consider all of the Appellant's individual 18 U.S.C. § 3553

factors in denying his request for a downward variance.

**REQUEST FOR ORAL ARGUMENT**

Counsel for Lloyd B. Carr respectfully does not request oral argument in this case. Should this Honorable Appellant Court feel that further exploration or clarification of the issues would benefit from oral argument, then it would be welcomed.

Respectfully submitted,

/s/ Dorwin J. Wolfe
Dorwin J. Wolfe
The Wolfe Law Firm
200 Kerens Avenue
Elikins, West Virginia 26241
(304) 637-5755

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*4,701*] words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number
of*] lines of text, excluding the parts of the brief exempted by Fed. R. App.
P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
because:

[ X ] this brief has been prepared in a proportionally spaced typeface using
[*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state
name and version of word processing program*] with [*state number of
characters per inch and name of type style*].

Dated: October 8, 2014                    /s/ Dorwin J. Wolfe
                                          *Counsel for* Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 8th day of October, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Blaire L. Malkin
OFFICE OF THE U.S. ATTORNEY
Southern District of West Virginia
300 Virginia Street East, Room 4000
Post Office Box 1713
Charleston, West Virginia  25326
(304) 345-2200

*Counsel for Appellee*

I further certify that on this 8th day of October, 2014, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Volume of the Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellee, at the above address.

/s/ Dorwin J. Wolfe
*Counsel for Appellant*